# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

| | |
|---|---|
| ERIK A. AHLGREN, in his capacity as assignee in the assignment for the benefit of creditors of Ashby Farmers Co-Operative Elevator Company,<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A. d/b/a CHASE CARD SERVICES,<br><br>Defendant. | Civil No. 19-1576 (JRT/LIB)<br><br>**MEMORANDUM OPINION AND ORDER** |

Matthew R. Burton, **MORRISON SUND, PLLC**, 5125 County Road 101, Suite 200, Minnetonka, MN 55345, Erik A. Ahlgren, **AHLGREN LAW OFFICE, PLLC**, 220 West Washington Avenue, Suite 105, Fergus Falls, MN 56537, for plaintiff.

Michael M. Krauss, Johanna R. Hyman, and Peter Kieselbach, **GREENBERG TRAURIG, P.A**, 90 South Seventh Street, Suite 3500, Minneapolis, MN 55402, for defendant.

This case arises out of Jerry Hennessey's unauthorized use of funds from his prior employer, the Ashby Farmers Co-Operative Elevator Company (the "Co-Op"). From 2003 to 2018, Hennessey paid over $5 million of the Co-Op's funds to himself or directly to third parties for his personal benefit. Among others, Hennessey paid Defendant JP Morgan Chase Bank, N.A. d/b/a Chase Card Services ("Chase") with checks from the Co-Op to cover charges he accrued on his personal Chase credit card while on exotic hunting trips. Upon discovery of the fraud in 2018, the Co-Op ceased operations and appointed an

Assignee, Plaintiff Erik Ahlgren, to pursue claims and remedies on behalf of the Co-Op and its creditors. Ahlgren brought this action on May 24, 2019, seeking to void the unauthorized payments to Defendant. Ahlgren alleges three Counts: (I) actual fraud pursuant to the Minnesota Uniform Voidable Transactions Act ("MUVTA"), Minn. Stat. §§ 513.44(a)(1), 513.47; (II) constructive fraud pursuant to MUVTA, Minn. Stat. §§ 513.45(a), 513.47; and (III) unjust enrichment.

Presently before the Court is Chase's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, the Court will grant the motion as to Count III and deny the motion as to Counts I and II.

## BACKGROUND

### I. FACTUAL BACKGROUND

The Co-Op is a grain farmers' cooperative based in Ashby, Minnesota. (Notice of Removal, Ex. A ("Compl.") ¶¶ 1, 12–13, June 14, 2019, Docket No. 1.) The Co-Op purchases grain from local farmers, who are also owners of the Co-Op, and sells it to grain markets. (*Id.* ¶ 13.) In 1989, the Co-Op hired Jerry Hennessey as its general manager. (*Id.* ¶ 14.) In this role, Hennessey "had access and control over [the Co-Op's] assets" and bank accounts and "was trusted to act in the best interest of [the Co-Op]." (Decl. of Erik A. Ahlgren ("Ahlgren Decl.") ¶ 6, Ex. D at 30, Aug. 2, 2019, Docket No. 20.)[1] Between June

---

[1] Page numbers listed as pincites to the exhibits in Docket No. 20 refer to the page number of the entire PDF copy of Docket No. 20.

2003 and September 2018, Hennessey received over $5.4 million in unauthorized funds from the Co-Op by writing checks from the Co-Op to himself and third parties to pay for personal bills, home improvement projects, property purchases, and domestic and international hunting trips. (Compl. ¶¶ 15–17, 28.) Hennessey hid the true nature of the checks by coding them as feed purchases or other ordinary expenses. (*Id.* ¶ 16.)

Chase is a national credit-card issuer conducting business within the State of Minnesota and has offices in New York, NY. (*Id.* ¶ 2.) Beginning in 2008, Hennessey cut at least $546,970.00[2] in Co-Op checks, made payable to "Chase Card Services," to cover charges made on his personal credit card issued by Chase. (*Id.* ¶ 17–18.) The payments related to Hennessey's personal, exotic hunting trips and did not benefit the Co-Op in any way. (*Id.* ¶¶ 16–19.) Ahlgren alleges that Chase wrongfully accepted the Co-Op checks even though their contractual relationship was with Hennessey and not with the Co-Op. (*Id.* ¶ 20.)

According to Ahlgren, Hennessey fraudulently and intentionally concealed the checks in an effort to hinder, delay and defraud the government, governmental authorities, the Co-Op and the Co-Op Board of Directors. (*Id.* ¶ 21.) Ahlgren claims the Co-Op was insolvent the entire time the unauthorized checks were being issued but that Hennessey concealed the Co-Op's insolvency by (1) overstating the value of grain and product

---

[2] The parties dispute the total amount in controversy. Chase argues that Ahlgren has inflated the payments that Hennessy made to Chase Card Services in his Complaint and that the actual amount is $271,968.59, not $546,970.00. Upon review, it appears that every check is duplicated at least once, and four checks were duplicated three times.

inventory; (2) failing to fully disclose accounts payable to Co-Op members for grain delivered; and (3) valuing equity in other cooperatives based on their projected value as opposed to their current fair market value. (*Id.* ¶ 23.) Hennessey also obtained a $7 million-plus line of credit for the Co-Op in his ongoing efforts to conceal his fraud and cover up the Co-Op's expenses. (Ahlgren Decl. ¶ 4, Ex. C at 14–15.)

The fraud was discovered in September 2018. (Compl. ¶ 28.) As a result of Hennessey's fraud, the Co-Op was forced to close and has been unable to pay its debts. (*Id.* ¶ 13.) In December 2018, the Co-Op executed an assignment (the "Assignment") with Erik Ahlgren for the benefit of the Co-Op's creditors. (*Id.* ¶ 4; Ahlgren Decl. ¶ 9, Ex. G at 46–54.) Pursuant to Minnesota Statutes, chapters 576 and 577, Ahlgren has committed to liquidating and administering the Co-Op's assets and may pursue any claim or remedy that could be asserted by the Co-Op or by a creditor of the Co-Op. (Compl. ¶¶ 5, 7.) According to reports filed with the Assignment, the Co-Op has forty-three creditors, most of which are based in Minnesota. (Ahlgren Decl. ¶ 9, Ex. G at 53–54.) On February 14, 2019, Hennessey pleaded guilty to mail fraud and income tax evasion. (Ahlgren Decl. ¶ 4, Ex. C at 13–25.)

## II. PROCEDURAL BACKGROUND

Ahlgren brought this action in Grant County District Court on May 24, 2019, alleging three Counts: (I) actual fraud pursuant to Minn. Stat. §§ 513.44(a)(1), 513.47; (II) constructive fraud pursuant to Minn. Stat. §§ 513.45(a), 513.47; and (III) unjust enrichment. (Compl. ¶¶ 29–51.) On June 14, 2019, Chase removed the case to this Court.

(Notice of Removal at 6.) Presently before the Court is Chase's Motion to Dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). (Mot. to Dismiss, July 5, 2019, Docket No. 11.)

## DISCUSSION

### I. STANDARD OF REVIEW

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In other words, a complaint "does not need detailed factual allegations" but must include more "than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"When considering a Rule 12(b)(6) motion, 'the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily

embraced by the pleadings.'" *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999)).

Chase seeks Dismissal of Count I for actual fraud, Count II for constructive fraud, and Count III for unjust enrichment. Each argument is considered in turn below.

## II.   COUNT I: ACTUAL FRAUD

The MUVTA provides that "a transfer made or obligation incurred by a debtor is voidable as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or, defraud any creditor of the debtor." Minn. Stat. § 513.44(a)(1). The MUVTA is a remedial statute and should be interpreted broadly. *Reilly v. Antonello*, 852 N.W.2d 694, 701 (Minn. Ct. App. 2014). "Intent for a corporation under [MUVTA] is still derived from a natural person in control." *In re Petters Co., Inc.*, 557 B.R. 711, 734 n.32 (Bankr. D. Minn. 2016) (citing *Reilly*, 852 N.W.2d at 701).

Chase argues that because Hennessey was not "authorized" to issue the checks in question for his personal benefit, his fraudulent intent cannot be imputed to the Co-Op. The Court disagrees.

First, the MUVTA is to be interpreted broadly. Chase proposes an exceedingly narrow definition that would almost never allow a corporate actor's intent to be imputed to the corporation under MUVTA, because a corporate actor could never be said to be "authorized" to commit fraud. This would nullify the statute's purpose.

Second, corporate intent under MUVTA is derived from the intent of a natural persons in control. *In re Petters Co., Inc.*, 557 B.R. at 734 n. 32; *see generally In re Tribune*

*Co. Fraudulent Conveyance Litig.*, 2017 WL 82391 (S.D.N.Y. Jan. 6, 2017) (interpreting a similar statute and noting "the intent of the debtor's officers may be imputed to the debtor if the officers were 'in a position to control the disposition of [the transferor's] property,' thereby effectuating the underlying offense" (quoting *In re Roco Corp.*, 701 F.2d 978, 984 (1st Cir. 1983)).

Hennessey was in control of the day-to-day activities of the Co-Op, including its bank accounts. Thus, Hennessey controlled the transactions at issue that effectuated the alleged fraud. *See In re Tribune*, 2017 WL 82391 *7. Because corporations must act through agents and Hennessey controlled the day-to-day activities of the Co-Op, including its bank accounts, Hennessey's fraudulent intent can be imputed to the Co-Op under MUVTA.

Accordingly, the Court will deny Chase's Motion to Dismiss Count I.

### III.  COUNT II: CONSTRUCTIVE FRAUD

Chase moves for dismissal of Count II for constructive fraud. "To cover the variety of situations in which debtors may attempt to place assets beyond the reach of creditors, [MUVTA] allows creditors to recover assets that a debtor transfers with fraudulent intent as well as those transfers that the law treats as constructively fraudulent." *Finn v. Alliance Bank*, 860 N.W.2d 638, 644 (Minn. 2015) (cleaned up) (citing Minn. Stat. §§ 513.44(a)(1)–(2), 513.45). "[C]onstructive fraud[] does not require proof of fraudulent intent." *Id.* at 645. Instead, "a claim for constructive fraud turns on a creditor's ability to show that the debtor made the transfer 'without receiving [a] reasonably equivalent value,' and that the

debtor was insolvent, or the transfer made the debtor insolvent or unable to pay its debts." *Id.* (quoting Minn. Stat. §§ 513.44(a)(2), 513.45(a)). "A debtor in insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets." Minn. Stat. § 513.42(a).

Chase argues Ahlgren has failed to sufficiently plead that the Co-Op was insolvent at the time each check was issued or became insolvent as a result of the checks. The Court disagrees. Insolvency is a factual question that "do[es] not need to be supported by the sort of detailed facts expected to be uncovered at discovery." *In re: RFC & ResCap Liquidating Tr. Litig.*, No. 13-CV-3451 (SRN/HB), 2017 WL 1483374, at *7 (D. Minn. Apr. 25, 2017). At this stage of the proceeding, Ahlgren has met his burden. Ahlgren's complaint paints a detailed picture of the extensive, multimillion-dollar fraud that took place that caused the Co-Op's closure. Defendant allegedly received hundreds of thousands of dollars in unauthorized funds. Further, Hennessey obtained a $7 million line of credit to keep the Co-Op afloat.[3] These alleged facts establish plausibility that the Co-Op was insolvent at the time of the transfers or became insolvent as a result of the transfers.

Accordingly, the Court finds Ahlgren has adequately pleaded a claim for constructive fraud and will deny Chase's Motion to Dismiss Count II.

Even so, while Ahlgren his met his burden at the pleading stage, to survive a motion for summary judgment Ahlgren must show, "asset-by-asset and transfer-by-transfer," that

---

[3] The Court considers the Plea Agreement here because it is a public record and does not contradict the pleadings. *Smithrud*, 746 F.3d at 395.

the Co-Op was insolvent at the time of each transfer or became insolvent as a result of each transfer. *Finn*, 860 N.W.2d at 647.

## IV. COUNT III: UNJUST ENRICHMENT

Chase seeks dismissal of Count III for unjust enrichment. "[I]t is well settled in Minnesota that one may not seek a remedy in equity when there is an adequate remedy at law." *Bartholomew v. Avalon Capital Grp., Inc.*, 828 F. Supp. 2d 1019, 1030 (D. Minn. 2009) (quoting *Southtown Plumbing Inc. v. Har–Ned Lumber Co.*, 493 N.W.2d 137, 140 (Minn Ct. App. 1992)). A plaintiff then "may not simultaneously maintain his claims for avoidance of transfers as fraudulent under statute, and his claims for monetary recovery under the equitable theory of unjust enrichment, as to the same transfers and on the same pleaded facts." *In re Petters Co., Inc.*, 499 B.R. 342, 375 (Bankr. D. Minn. 2013).

Ahlgren pleads, on the same facts, both statutory claims under MUVTA and equitable claims for unjust enrichment. The Court therefore finds that Ahlgren's claim in equity is precluded by his claim at law. *Bartholomew*, 828 F. Supp. 2d at 1030; *see also Ahlgren v. Link*, Civil No. 19-305, 2019 WL 3574598, at *6 (D. Minn. Aug. 6, 2019) (discussing and dismissing similar claims).

Accordingly, the Court will grant Defendant's Motion to Dismiss Count III for unjust enrichment.

## V. LEAVE TO AMEND

Ahlgren requests leave to amend his complaint if the Court dismisses any of his claims. Federal Rule of Civil Procedure 15(a) provides that, once the period for

amendment of the pleadings as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotations omitted). "A motion to amend is properly denied as futile when 'the proposed amended complaint cannot survive a motion to dismiss for failure to state a claim.'" *Boitnott v. Border Foods Inc.*, 361 F. Supp. 3d 858, 868 (D. Minn. 2019) (quoting *Lunsford v. RBC Dain Rauscher, Inc.* 590 F. Supp. 2d 1153, 1158 (D. Minn. 2008)).

The Court finds that allowing leave to amend would be futile as Ahlgren's unjust enrichment claim cannot survive a Fed. R. Civ. P. 12(b)(6) motion. The Court will however allow Ahlgren leave to amend the complaint to correct perceived errors regarding the funds at issue. As noted in footnote two, it appears that several of the checks in the complaint are duplicates and the total amount of Co-Op funds Hennessey issued to Chase may be lower than the $546,970 alleged in the complaint. Ahlgren must amend his complaint to correct this perceived error or explain to the Court why no error exists.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) [Docket No. 11] is **GRANTED in part and DENIED in part as described herein;**

1. The Motion is **DENIED** as to Count I for actual fraud and Count II for constructive fraud;

2. The Motion is **GRANTED with prejudice** as to Count III for unjust enrichment.

3. Ahlgren's request for leave to Amend is **GRANTED only to the extent necessary to correct perceived errors** in the amount at issue as discussed above. Ahlgren must either file an amended complaint correcting these errors or file a letter with the Court explaining why it should not dismiss the seemingly duplicative checks.

DATED: February 4, 2020  
at Minneapolis, Minnesota.

                                                                                     JOHN R. TUNHEIM  
                                                                                          Chief Judge  
                                                              United States District Court